# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| JOSE JUAN MACIAS SOTO, | Civil No. 05-2080 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CORE-MARK INTERNATIONAL, INC., | |
| Defendant. | |

Stephen M. Thompson and Tammy P. Friederichs, **FRIEDERICHS & THOMPSON, PA**, 1120 East 80th Street, Suite 106, Bloomington, MN 55420, for plaintiff.

David W. Larson, **MARTIN & SQUIRES**, 444 Cedar Street, Suite 2050, St. Paul, MN 55101, for defendant.

Plaintiff Jose Juan Macias Soto filed this lawsuit against defendant Core-Mark International, Inc. for national origin discrimination and retaliation in violation of Title VII and the Minnesota Human Rights Act ("MHRA"). This matter is before the Court on defendant's motion for summary judgment. For the reasons stated below, the Court grants defendant's motion.

## BACKGROUND

Defendant Core-Mark International, Inc. is a company based in California with a warehouse in Plymouth, Minnesota. Plaintiff Jose Juan Macias Soto, who is Mexican,

was employed by defendant for approximately one year.  He was terminated on December 30, 2003.

On June 25, 2003, plaintiff sustained a back injury while working on the job as a driver.  As a consequence of this injury, plaintiff was temporarily reassigned from his driver position to light duty.  Plaintiff's doctor issued work restrictions, such as lift/carry maximums and bending at waist limitations.  The restrictions also provided that plaintiff alter his position as needed, sit or stand as needed, walk frequently, and perform back stretching exercises frequently throughout his shift and upon the onset of any symptoms of back pain.  Plaintiff supplied defendant with all the required medical documentation, and his managers were aware of the restrictions.

During the fall of 2003, plaintiff told his supervisor that he believed he was being discriminated against because of his national origin.  He asserted that only white employees were allowed to wear jackets over their uniforms and use cell phones.  Defendant then posted a memo that no workers could wear jackets over their uniforms or use cell phones, but plaintiff alleges that defendant continued to permit white drivers to break the rules in this way.

In November 2003, defendant issued two attendance warnings to plaintiff within a two-week period.  Plaintiff asserts that these warnings were unjustified because back pain caused his late arrival and he received approval from his direct supervisor.

On December 2, 2003, plaintiff again asked permission to wear his jacket over his uniform.  He explained that he observed white workers wearing jackets, but defendant again stated that no workers may wear jackets over their uniforms.  Later that day,

plaintiff asked to leave early because he was experiencing chest pain. He was told his employment would be terminated if he left. After his shift was completed, he went to an urgent care clinic and was diagnosed with pneumonia. His doctor did not allow him to return to work until December 12, 2003.

On December 12, 2003, plaintiff again tried to wear a jacket over his uniform because he was still recovering from pneumonia. His supervisor again told him that it was not permitted. Plaintiff was also given a warning letter stating that he could no longer bring a complaint directly to a supervisor named Toni Gonzalez, and that he must make an appointment through a manager before meeting with her. At that time, plaintiff started the process of filing a discrimination charge. During a meeting with his supervisors, he again articulated his belief that he was being discriminated against because only white workers were allowed to wear jackets over their uniforms.

On December 26, 2003, plaintiff was assigned to clean an office. The job required bending to peel off stickers from the floor, and plaintiff asserts that the bending made his back hurt. He sat down to rest and stretch his back. From a seated position, he leaned forward, placed his head on his forearms, and pushed his back forward and up. Plaintiff asserts that his eyes were open and he was looking down at the floor. He remained in this stretching position for several minutes. Plaintiff asserts that this stretching exercise was prescribed as part of his therapy.

Two workers reported to a manager, Richard Laliberte, that they had observed plaintiff sleeping at his workstation. Laliberte testified that after the report, he walked from his office to plaintiff's workstation, and observed plaintiff for several minutes

sleeping with his eyes closed. He testified that he awakened plaintiff, drafted a report on the incident, and provided it to Gonzales. Plaintiff asserts that he noticed Laliberte when plaintiff saw Laliberte's shoes, and that he explained to Laliberte that he was stretching, not sleeping.

On the morning of December 30, plaintiff told a co-worker that he planned to file a charge of discrimination and asked whether she would be a witness for him. Plaintiff asserts that this co-worker must have told other employees about this conversation because one of his supervisors later testified that he knew plaintiff was planning on exercising his rights under the MHRA.

On December 30, 2003, Gonzales addressed Laliberte's report on the alleged sleeping incident. As part of her investigation, Gonzales received statements from the workers who initially told Laliberte that plaintiff was sleeping. Neither of the witness statements actually accuse plaintiff of being asleep but rather profess that he appeared to be sleeping. One worker stated, "I can't say for sure that he was asleep . . . ." (Docket No. 20 at Ex. 21.) Gonzales also spoke with Laliberte, who reiterated that plaintiff was sleeping. She then discussed the situation with the corporate director of human resources and the operations supervisor, and these individuals determined that plaintiff should be terminated. Defendant was issued a termination letter later that day, and the letter references the sleeping accusation as the basis for the termination.

Plaintiff brought a complaint of discriminatory discharge to the Equal Opportunity Employment Commission ("EEOC"). Following an investigation, the EEOC made a finding of no probable cause. On September 8, 2005, plaintiff brought this action,

x

alleging that his termination violated Title VII and the MHRA. Defendant now moves for summary judgment.

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### II. NATIONAL ORIGIN AND REPRISAL DISCRIMINATION CLAIMS

Plaintiff asserts claims of national origin and reprisal discrimination in violation of Title VII and the MHRA.[1] First, plaintiff argues that he was terminated because he is Mexican. Title VII and the MHRA prohibits an employer from discharging an individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see* Minn. Stat. § 363A.08, subd. 2. Second, he argues that his

---

[1] The same standards are used to analyze both Title VII and MHRA claims, and therefore, the above stated analysis applies to both claims. *See Hanenburg v. Principal Mut. Life Ins. Co.*, 118 F.3d 570, 574 (8th Cir. 1997).

termination was in retaliation for complaining about discrimination to his supervisors and for filing a complaint with the EEOC. Title VII and the MHRA prohibit employers from engaging in any reprisal against a person because that person opposed a practice forbidden under the laws prohibiting discrimination and harassment. 42 U.S.C. § 2000e-3; Minn. Stat. § 363A.15.

For claims of national origin and reprisal discrimination where the plaintiff fails to produce direct evidence of discrimination, state and federal courts utilize the three-part, burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973). *See Arraleh v. County of Ramsey*, 461 F.3d 967 (8th Cir. 2006) (Title VII and MHRA national origin discrimination claims); *Scott v. County of Ramsey*, 180 F.3d 913, 917 (8th Cir.1999) (Title VII and MHRA retaliation claims). Under *McDonnell Douglas*, a plaintiff has the burden of establishing a prima facie case of discrimination. 411 U.S. at 802. Once the plaintiff establishes his prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant meets this burden, the plaintiff bears the burden of demonstrating that the defendant's stated reason is a pretext for discrimination. *Id.* at 804. Here, defendant focuses its argument on plaintiff's burden to demonstrate pretext.

The Court assumes for purposes of this motion that plaintiff has satisfied his burden of establishing prima facie cases of national origin and reprisal discrimination.

Defendant must then articulate a legitimate, nondiscriminatory reason for firing plaintiff.[2] Defendant has met this burden by explaining that defendant believed plaintiff had been sleeping on the job. The inquiry then becomes whether plaintiff has produced sufficient evidence to meet his burden of proving pretext. *Cronquist v. City of Minneapolis*, 237 F.3d 920, 926 (8th Cir. 2001). To survive summary judgment at this stage of the *McDonnell Douglas* analysis, plaintiff must create a fact issue as to whether defendant's proffered reason is pretextual and whether a prohibited motive was a determinative factor in the discharge. *Id.*

Plaintiff asserts that defendant's explanation for firing plaintiff is false, or at least not worthy of belief, and is therefore pretextual. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (explaining that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated"). Specifically, plaintiff asserts that he was not sleeping, and defendant's asserted belief that he was sleeping is not credible because defendant relied on incomplete and faulty witness accounts to conclude that he was sleeping. Plaintiff

---

[2] Plaintiff argues that he suffered numerous adverse employment actions, including being forbidden from wearing a jacket over his uniform, using a cell phone, or contacting Gonzalez directly with his complaints. He also asserts that he received two unjustified attendance warnings and did not receive the benefit of a full investigation into the incident that led to his termination. "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Spears v. Missouri Dep't of Corrections & Human Resources*, 210 F.3d 850, 853 (8th Cir. 2000). "Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard, . . . but minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not." *Id.* The Court concludes that plaintiff's termination is the only adverse employment action that he suffered. As such, defendant need not offer a legitimate, non-discriminatory explanation for the other actions.

emphasizes that the statements from his coworkers state only that he appeared to be asleep. Plaintiff also asserts that the report by Laliberte is unreliable because of inconsistencies between an email he sent and the report in the file and the deposition testimony.[3]

The Court concludes that plaintiff has not produced sufficient evidence of pretext. Defendant relied upon statements from three eyewitnesses, who stated that it appeared to them that plaintiff was sleeping. A manager for defendant testified that he believed the witnesses to be credible based on his many years of experience with the witnesses. The inconsistencies between the email and report and deposition testimony by Laliberte are inconsequential. Even if plaintiff was not actually asleep, his termination was not discriminatory because the Court concludes that the defendant had an honest good faith belief that plaintiff was asleep. *See Hitt v. Harsco Corp.*, 356 F.3d 920, 924 (8th Cir. 2004) (explaining that the key question in a discrimination case in not whether the misconduct actually occurred but "whether the employer really *believed*" that it did); *Scroggins v. Univ. of Minn.*, 221 F.3d 1042, 1045 (8th Cir. 2000) (holding that the relevant inquiry in retaliation cases is whether the employer believed the employee was guilty of the conduct justifying the discharge).

As for the national origin discrimination claim, plaintiff also attempts to demonstrate that defendant's explanation was pretextual by arguing that similarly situated white workers received more favorable treatment. *See Erickson v. Farmland Indus., Inc.*,

---

[3] For example, the deposition testimony differed from the email and report by stating that when Laliberte observed plaintiff, plaintiff had his head to the side, not down. The time of the incident differed by 15 minutes between the email and report.

271 F.3d 718, 726-27 (8th Cir. 2001) (discussing commonly employed methods of demonstrating pretext). "The test to determine whether employees are 'similarly situated' to warrant a comparison to a plaintiff is a 'rigorous' one." *EEOC v. Kohler Co.*, 335 F.3d 766, 775 (8th Cir. 2003). "Specifically, the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.* at 776.

Plaintiff asserts that white workers were allowed to wear jackets over their uniforms and use cell phones but that he faced reprimand for doing these things. He argues that no white worker was prohibited from speaking to the human resources department directly, while he was threatened with termination if he continued to bring complaints directly to Gonzalez. Finally, plaintiff asserts that a white worker who was found sleeping on the job was interviewed by the person who decided to fire her, but plaintiff was never given an opportunity to explain his behavior to the persons who decided to fire him.

While plaintiff has likely put forth enough evidence of national origin discrimination to establish a prima facie case, a showing of pretext requires more substantive evidence than plaintiff has provided. *See Cherry v. Ritenour Sch. Dist.*, 361 F.3d 474, 479 (8th Cir. 2004) ("[T]he presumptive case requires only a minimal showing, while a showing of pretext requires more substantial evidence."). The record indicates that defendant had a rule prohibiting all employees from wearing jackets over their uniforms and using cell phones. Plaintiff was not similarly situated to white workers who

engaged in this behavior without reprimand. Plaintiff attracted attention to his behavior by repeatedly complaining that he observed others engaging in this behavior and repeatedly asking for permission to break the rules. As for the fact that defendant prohibited plaintiff from complaining directly to Gonzalez, plaintiff has not established that other white workers who were allowed to complain to her directly were similarly situated to plaintiff. Plaintiff's circumstances are distinguishable because he had repeatedly complained to her. Finally, the fact that plaintiff was not interviewed by the individuals that decided to fire him is inconsequential. Plaintiff had the opportunity to explain his behavior to a manager, Laliberte, and it was reasonable for defendant to rely upon the reports of Laliberte and plaintiff's coworkers when making the decision to terminate him.

Because the Court concludes that plaintiff has failed to prove pretext for his claims, the Court grants defendant's motion for summary judgment.

## ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment [Doc. No. 12] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:   January 3, 2007                                               s/ John R. Tunheim
at Minneapolis, Minnesota.                               JOHN R. TUNHEIM
                                                                              United States District Judge